UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

YASMANY CASTRO-NAPOLES,

Petitioner,

v.

KRISTI NOEM, ET AL.,

Respondents.

Case No.  26-cv-03212-RFL

**ORDER GRANTING PETITION WRIT OF HABEAS CORPUS**

Petitioner Yasmany Castro-Napoles filed a petition for writ of habeas corpus pursuant to 28 U.S.C. Section 2241, requesting immediate release or a bond hearing.  (Dkt. No. 1 ("Petition").)  Petitioner's first claim is that his detention violates *Zadvydas v. Davis*, 533 U.S. 678 (2001) and 8 U.S.C. § 1231.  (*Id*.)  Second, he claims that Immigration and Customs Enforcement ("ICE") disobeyed its own regulations, resulting in a violation of Petitioner's regulatory and due process rights.  (*Id*.)[1]  The Court concludes that Petitioner prevails on his first claim and so will address that claim only.

I.    **LEGAL STANDARD**

A writ of habeas corpus is "available to every individual detained within the United

---

[1] The Petition asserts a third and fourth claim relate to potential removal to a third country, but the Traverse does not respond to the government's arguments regarding these claims, and they are therefore deemed abandoned.  (Dkt. No. 8.)  *See Obrien v. Bisignano*, 142 F.4th 687, 694 n.6 (9th Cir. 2025).

1

States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004). "[T]he traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates that they are in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). It applies to non-citizens detained within the United States. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). Since Petitioner is in custody and since he is seeking release from custody, he has standing to pursue this Petition.

## II.    ANALYSIS

Petitioner, a citizen of Cuba, entered the United States and was apprehended by Border Patrol on or around April 17, 2019. (Petition at 4;[2] Dkt. No. 5-2 ¶ 5.) On August 29, 2019, Petitioner was released from ICE detention on bond and has been residing in the United States since that time. (Petition at 4; Dkt. No. 5-2 ¶ 7.) On July 21, 2022, Petitioner was ordered removed to Cuba, and the order became final on August 22, 2022. (Dkt. No. 5-2 ¶ 8.) Petitioner remained at liberty following his order of removal. (*Id.* ¶ 9.) On May 8, 2026, Petitioner was taken into ICE custody after a car he was riding in accidentally drove to the entrance of a military base, and Petitioner remains detained. (Petition at 4, 24.) Petitioner has not "spoken to any ICE agent about what they plan to do with him . . . [and] has not heard . . . when they intend to remove him." (*Id.* at 4.) In a declaration submitted with their Return, Respondents assert that Petitioner was taken into "custody to effectuate removal." (Dkt. No. 5-2 ¶ 11.) They assert that Petitioner was "provided the option to be removed to Mexico" but that he declined. (*Id.* ¶ 12.) Respondents state that the "identification" "documents necessary to effectuate" Petitioner's removal to Cuba have now been obtained, and that the government will "submit a request to the Cuban government to accept Petitioner's repatriation." (*Id.* ¶¶ 13–14.) Respondents do not provide a timeline for when they anticipate that they will request or receive such acceptance, nor do they submit any evidence as to why they have not attempted to remove Petitioner over the

---

[2] Citations to page numbers refer to ECF pagination.

course of the past four years.

When a non-citizen is ordered removed, the government is generally required to detain them for ninety days pending efforts to secure their removal. *See* 28 U.S.C. § 1231(a)(2)(A). This ninety-day period is referred to as the "removal period." *Id.* § 1231(a)(1)(A). After the removal period ends, Section 1231's plain language neither requires nor explicitly places limits on any further detention. *Id.* § 1231(a)(6) (individuals "*may* be detained beyond the removal period") (emphasis added). However, the Supreme Court has found that Section 1231 "limits a [non-citizen]'s post-removal-period detention to a period reasonably necessary to bring about [their] removal from the United States" and "does not permit indefinite detention." *Zadvydas*, 533 U.S. at 689.

To reach this determination, the Supreme Court found that Section 1231 was ambiguous, and read in a reasonable time limit after analyzing the statute's legislative history and finding no evidence "clearly demonstrat[ing] a congressional intent to authorize indefinite, perhaps permanent, detention." *Id.* at 699. "[I]nterpreting the statute to avoid a serious constitutional threat," the Supreme Court "conclude[d] that, once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* It further held that a six-month period of post-removal detention constitutes a "presumptively reasonable period of detention." *Id.* at 701. After this six-month period passes, the petitioner has the burden to "provide[ ] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* If a petitioner satisfies their initial burden, the burden then shifts to the government to rebut that showing. *Id.*

It is undisputed that Petitioner was ordered removed in 2022. Therefore, Petitioner argues that under *Zadvydas* the presumptively reasonable period of detention to effectuate his removal has long passed. He further identifies good reason to believe there is no significant likelihood that he will be removed in the reasonably foreseeable future. First, he points to the fact that Respondents have not successfully removed him in the nearly four years since his removal order became final. Second, Petitioner notes that upon redetaining him, Respondents

3

first attempted to remove him to a third country, suggesting that they did not believe that they could effectuate removal to Cuba. Third, Petitioner points to a 2019 Office of Inspector General Report stating that Cuba has been "consistently categorized" as an "uncooperative country" based on its failure to provide travel documents on a timely basis, despite a 2017 repatriation agreement between the United States and Cuba.[3] Finally, Petitioner cites a recent case where Cuba declined to repatriate a Cuban citizen who entered the United States in 2019. *Boza-Rosales v. Blanche*, No. 26-cv-0624-TSZ, 2026 WL 1412456, at *1 (W.D. Wash. May 15, 2026).

Respondents reply that Petitioner's *Zadvydas* argument is premature because, since he was ordered removed, Petitioner has only been in detention for a little over a month. Respondents argue that the presumptively reasonable detention period under *Zadvydas* runs from the point at which detention begins, and not from the end of the removal period. *Zadvydas* itself had no reason to reach this question, because the petitioners in that case had been in continuous detention after being ordered removed, until the district court ordered them released pursuant to their habeas petition. 533 U.S. at 684–86. However, a review of the legislative history relied on by *Zadvydas* supports Petitioner's position, not Respondents'.

In *Khoury v. Garite*, another district court recently addressed the government's argument in materially similar circumstances. No. 25-cv-00577-DCG, 2026 WL 1179822, at *5 (W.D. Tex. Apr. 21, 2026). The court reviewed the same legislative history relied upon by the Supreme Court in *Zadvydas*, and found that it reflected congressional concern over the constitutionality of *indefinite* confinement, not "that Congress viewed six months (by itself) as a constitutional limit to detention." *Id.* at *7 & n. 42. The six-month timeframe was instead repeatedly discussed in the legislative materials as the "period in which the government was ordinarily able to complete the removal process" and was marked by the "passage of time since a [non-citizen's] removal order—not detention time." *Id.*; *see also* S. Rep. 2239, 81st Cong., 2d Sess., 6 (1950) ("6 months is a reasonable time to grant to our Government within which to conclude the

---

[3] https://www.oig.dhs.gov/sites/default/files/assets/2019-03/OIG-19-28-Mar19.pdf at p. 19 n.32, p. 29; *see also* https://www.state.gov/17-112/.

4

necessary detail work involved in some cases before deportation of a [noncitizen] can be effected"); *Id.* at 5 (similar); H. Rep. 1192, 81st. Cong., 1st Sess., 6 (1950) (the AG would be authorized to "hold arrested [noncitizens]" "for a 6-month period after an order of deportation is issued and while such negotiations take place").  Moreover, as discussed in the legislative history, this six-month period was measured from the date of the removal order regardless of whether the alien was "detained, released on conditional parole, or upon bond."  S. Rep. 2239, 81st Cong., 2d Sess., 2 (1950); *see also id.* at 5–6 (discussing the Attorney General's discretion to impose bond or conditional parole conditions within the 6-month period); H. Rep. 1192, 81st. Cong., 1st Sess., 2, 6 (same).

In other words, Congress viewed six months as a presumptively reasonable amount of time for the government to effectuate removal, regardless of the non-citizen's detention status during that time.  Once those six months have passed, removal is presumed not to be reasonably foreseeable, and thus any further detention is presumed to be unreasonable.  As the *Khoury* court explained, this conclusion "squares with *Zadvydas's* core principle that the nature and duration of detention must relate to the purpose for which someone is detained."  *Id.* at *8.

The Court agrees with the well-reasoned analysis in *Khoury*:  "[W]hether detention is presumptively reasonable must depend on when the removal order becomes final—not how long a[ noncitizen] has spent in detention."  2026 WL 1179822, at *7–8; *see also Nguyen v. Mullin*, No. 26-cv-2815-JAO, 2026 WL 1480803, at *2–3 (S.D. Cal. May 26, 2026) (holding that the presumptively reasonable period of detention starts when the removal order becomes final and continues to run even if the noncitizen is subsequently released).  Petitioner is entitled to the presumption that his detention is no longer reasonable, and has carried his burden of showing good reason to believe there is no significant likelihood that he will be removed in the reasonably foreseeable future for the reasons already discussed.

Finally, Respondents argue that they have rebutted Petitioner's showing.  However, the only evidence Respondents have introduced is the fact that they have acquired identification documents for Petitioner and *intend* to submit a request for repatriation at some unidentified time

in the future.  (Dkt. No. 5-2 ¶¶ 13–14.)  Respondents do not carry their burden of proof.  *Nguyen*, 2026 WL 1480803, at *4 ("The mere submission of a travel document request does not itself make removal reasonably likely").  Respondents have not provided the Court with the information necessary to determine when the Cuban government might accept repatriation, or that it will ever do so.  Respondents thus fail to rebut Petitioner's showing that there is no significant likelihood of removal.  Accordingly, the Petition is granted because Petitioner's detention is no longer authorized by Section 1231(a)(6).

## III.    REMEDY

When a district court grants a writ of habeas corpus it may "dispose of the matter as law and justice require."  28 U.S.C. § 2241(a), 2243.  Release from detention is the "typical remedy" for "unlawful executive detention."  *Munaf v. Geren*, 553 U.S. 674, 693 (2008).  The typical remedy is appropriate here to address the statutory violation identified above.  Furthermore, to ensure that Petitioner's release pursuant to this Order is not "rendered meaningless," it is necessary to enjoin the government from simply re-detaining Petitioner in the same manner.  *See Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, 321–22 & nn.19–20 (E.D.N.Y. 2025) (collecting cases); *Martinez v. McAleenan*, 385 F. Supp. 3d 349, 373 (S.D.N.Y. 2019).  As a result, the relief ordered below falls within the core of habeas.

## IV.    CONCLUSION

For the foregoing reasons, the petition for writ of habeas corpus is **GRANTED**. Respondents shall immediately release Petitioner, within 24 hours of the filing of this Order at the latest, subject to supervision under the regulations prescribed by the Attorney General, including the requirements of 8 U.S.C. § 1231(a)(3).  Respondents are **ENJOINED** from re-detaining Petitioner under 8 U.S.C. § 1231(a)(6) unless and until (1) Respondents obtain a valid travel document for his removal or a commitment from the Cuban government to accept his repatriation, or a material change in circumstances makes another provision of the statute authorizing his detention applicable, and (2) Respondents have followed all applicable statutory and regulatory procedures.

The Clerk of the Court shall close the case.

**IT IS SO ORDERED.**

Dated: June 15, 2026, at 9:30 a.m.

RITA F. LIN
United States District Judge